UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
JJS,

                              Petitioner                          19 Cv 2020 (VSB)(SDA)

v.

WARDEN J PETRUCCI,
                              Respondent.
------------------------------------------------------

**PETITIONER'S REPLY MEMORANDUM IN RESPONSE TO RESPONDENT'S OPPOSITION TO PETITIONER'S SUPPLEMENTAL MEMORANDUM REGARDING JURISDICTION**

Jeffrey G. Pittell
Attorney for Petitioner, JJS
*Maher & Pittell, LLP*
42-40 Bell Blvd, Ste. 302
Bayside, NY 11361
(516) 829-2299
jp@jpittell.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
JJS,

                            Petitioner                    19 Cv 2020 (VSB)(SDA)

v.

WARDEN J PETRUCCI,
                            Respondent.
-------------------------------------------------------

## PETITIONER'S REPLY MEMORANDUM IN RESPONSE TO RESPONDENT'S OPPOSITION TO PETITIONER'S SUPPLEMENTAL MEMORANDUM REGARDING JURISDICTION

### PRELIMINARY STATEMENT

This Reply Memorandum is submitted on behalf of Petitioner, JJS, in reply to RESPONDENT'S OPPOSITION TO SUPPLEMENTAL MEMORANDUM REGARDING JURISDICTION (the "Response") (ECF Doc. 154) and in further response to the Court's Order dated February 26, 2025 which, *inter alia*, directs the parties to address the jurisdiction of the Court (ECF Doc. 145).

### DISCUSSION

### Jurisdiction Is Appropriate in this Court

The initial habeas petition, which seeks relief pursuant to 28 U.S.C. §2241 (the "Petition"), was filed in this Court. (ECF Doc. 2). It named the warden of FCI Otisville as the Respondent.[1] On the date of the Petition's filing, JJS was in the custody at FCI Otisville.

---

[1] FCI Otisville is a correctional facility located in Otisville, New York. It is situated within the Southern District of New York. It is administered by the Federal Bureau of Prisons (the "BOP").

In *Rumsfeld v. Padilla*, the Supreme Court endorsed the "immediate custodian rule" by holding that "whenever a §2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."   542 U.S. 426, 447(2004), *see also, Padilla*, 542 U.S. at 435-449 (general discussion of the immediate custodian rule).  As such, the Petition complied with *Padilla* by naming the correct respondent and by being filed in the proper district.  In the Response, Respondent acknowledges the FCI Otisville warden is the correctly named Respondent and that the Petition was properly filed in this District. (Response, p.  5).

### Reply to Respondent's Arguments for a Dismissal or Transfer

Now, more than two years after Petitioner was transferred out of FCI Otisville and despite there being significant litigation before this Court including a two-day hearing, multiple submissions by the parties, and orders being issued -- all occurring while JJS was not confined in a facility within this District -- Respondent seeks a jurisdictional dismissal of this matter or transfer of this matter to the Northern District of Texas.

Respondent seeks this dismissal or transfer based upon two arguments.

One argument is that this case should be litigated in Texas because JJS's current custodian is the warden at FMC Carswell and this Court lacks personal jurisdiction over that warden. (Response, pp. 7-9).

However, the habeas relief sought by the Petition seeks an order directed to the BOP, at the executive level, not to a warden of a correctional facility.  Notably, this evident by the order -- issued by Judge Broderick which granted the claim in the Petition which sought transfer of JJS to a female

2

facility (the "Transfer Claim") -- being directed to the BOP (the "Transfer Order").  (ECF Doc. 86).
It was not directed at the warden named in the caption nor the warden who, on the date of the
issuance of the Transfer Order, had custody of JJS.[2]  In pertinent part, the Transfer Order states, "IT
IS FURTHER ORDERED that Petitioner's Writ for Habeas Corpus is GRANTED.  **BOP** is ordered
to transfer Ms. Shelby to a female facility as soon as possible, and in any event within 7 days."  (ECF
Doc. 86, p.2, emphasis added).  Moreover, when the Transfer Claim was actively litigated, which
occurred while JJS was held in MDC Brooklyn, Respondent never claimed this Court lacked
jurisdiction to address the Transfer Claim and sought transfer of the Petition to the Eastern District
of New York.  Similarly, Respondent never objected to the issuance of the Transfer Order on
jurisdictional grounds.

Regarding the GAS Claim, the current basis for the claim arises out of a BOP decision to
terminate a pending contract to provide GAS to JJS thereby deliberately withholding necessary
medical treatment needed by her.  This decision was not made by the warden, nor any staff member,
at FMC Carswell.  It was made by Jared Hamblin, a BOP Official, who is the Chief of the BOP
Comprehensive Medical Contracting Section. (ECF Doc. 149, Supplemental Memorandum, Exhibit
Binder, Ex. 6).  It was made in response to an Executive Order issued by the President of the United
States.  (Response, p. 4).  Moreover, the warden at FMC Carswell was not even a signatory to the
contract.  It was signed by Benjamin Keim who is a BOP contracting officer.  (ECF Doc. 149,
Supplemental Memorandum, Exhibit Binder, Ex. 4).  In addition, the Response informs that all

---

[2]
When Judge Broderick issued the Transfer Order, JJS was no longer in custody at FCI
Otisville.  She was in custody at MDC Brooklyn which is located in the Eastern District of New
York.

decisions regarding the provision, and denial, of GAS were made by BOP officials, not a warden. For example, the Response states: i) the TEC "was the [BOP] committee that was previously responsible for making decisions concerning accommodations and transfers for transgender inmates." (Response, p. 2); ii) JJS's request for GAS was "pursuant to the prior BOP policy in place at the time, would have been considered by the TEC only after Petitioner spent a year at a female facility." (Response, p. 3); iii) the GAS Claim "was held in abeyance because the BOP had begun taking the necessary steps to conduct its medical review of Petitioner's request for gender affirming surgery in accordance with its policies in effect at the time." (Response, p. 4); iv) the contract for GAS "had been awarded by the BOP to a medical provider in Texas" (Response, p. 4); v) and, "pursuant to the Executive Order, the BOP canceled the contract to provide Petitioner with gender affirming surgery, which had been scheduled for February 2025." (Response, p. 4). As such, Respondent's own admissions confirm the decisions to provide, and deny, GAS were made by BOP officials, not the warden at FMC Carswell.

Based upon the foregoing, although the caption of the Petition names a warden -- as required by the immediate custodian rule and set forth in 28 U.S.C. §2242 -- the actual entity against whom the Petition seeks relief is the BOP. If the writ is granted based upon the GAS Claim, the release order, like the Transfer Order, will be directed at the BOP. Since there is a BOP facility (to wit: FCI Otisville) located within this District, this Court has personal jurisdiction over the BOP and authority to issue an order directing the BOP to release JJS. *See, Mason v. Alatary*, 2023 WL 2965619 at *3 (N.D.N.Y. 2023) ("Courts have found that the presence of a BOP facility within the jurisdiction, even after a petitioner was transferred to a different judicial district, was sufficient to keep the respondent "within reach" and allow the original district court to maintain jurisdiction," citations

omitted).  Accordingly, just as Judge Broderick had jurisdiction to issue the Transfer Order --
directing the BOP to transfer JJS -- Judge Broderick has jurisdiction to order the BOP to order the
release of JJS if the Petition is granted based upon the GAS Claim.

As support for its argument, that this case should be litigated in Texas, because JJS's current
custodian is the FMC Carswell warden, Respondent refers to *Gonzalez v. Grondolsky*, 152 F. Supp.
39, 44 (D. Mass 2016;) *Prins v. Coughlin*, 76 F.3d 504 (2d Cir.1996); and *Rubbo v. Pullen*, 2022 WL
4080485 (D. Conn. 2022).  (Response, p.8).  However, these cases are neither controlling nor
persuasive.

In *Gonzalez*, the *pro se* petition was filed in the District of Massachusetts.  The respondent
moved for summary judgment on the merits of habeas claim.  No opposition papers were filed by
the *pro se* petitioner.  While the motion was pending, the district court learned the petitioner was
transferred to a South Dakota prison.  As a result, on its own initiative, the district court dismissed
the petition with leave for the petitioner to refile it in the District of South Dakota.  However, seven
years later, during 2023, in *Yancey v. Warden*, 682 F.Supp.3d 97 (2023) another Massachusetts
District Court questioned the propriety of the action by the court in *Gonzalez*.  In *Yancey*, the
petitioner was housed in the District of Massachusetts when he filed his §2241 habeas petition.
While the petition was pending, he was transferred to a different district and the respondent moved
to dismiss based upon a lack of personal jurisdiction.  As authority for denying the dismissal motion,
the *Yancey* Court indicated:

> In *Ex parte Endo*, 323 U.S. 283, 65 S.Ct. 208 (1944), the Supreme Court considered
> the effect on a federal district court's jurisdiction of a habeas petitioner's transfer to
> another district while the petition was pending. The petitioner . . . interned in
> California . . . properly filed a petition challenging her detention before being moved
> to Utah . . . The Court held that the district court in California could continue to
> exercise jurisdiction even after Endo was transferred to Utah because an official with

the authority to carry out any court order remained within the California court's jurisdiction . . . Accordingly, *Endo* stands for the proposition "that when the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441, 124 S.Ct. 2711. *Yancey*, 682 F.Supp.3d at 100.

As further support for denying the dismissal motion, the *Yancey* court noted that although the First Circuit (which includes the District of Massachusetts) has not addressed this issue:

> Nine other circuit courts have, and all have concluded based on *Endo* and/or its progeny that a prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction over a habeas corpus petitioner as long as there remains in the district a respondent who can effectuate any court order. *See McGee v. Martinez*, 490 F. App'x 505, 506 (3d Cir. 2012); *Lennear v. Wilson*, 937 F. 3d 257, 263 n.1 (4th Cir. 2019); *Owens v. Roy*, 394 F. App'x 61, 62-63 (5th Cir. 2010); *White v. Lamanna*, 42 F. App'x 670, 671 (6th Cir. 2002); *In re Hall*, 988 F. 3d 376, 378-79 (7th Cir. 2021); *Harris v. Ciccone*, 417 F.2d 479, 480 n.1 (8th Cir. 1969); *Johnson v. Gill*, 883 F. 3d 756, 761(9th Cir. 2018); *Pinson v. Berkebile*, 604 F. App'x 649, 652-53 (10th Cir. 2015); *Chatman-Bey v. Thornburgh*, 864 F. 2d 804, 806 n.1 (D.C. Cir. 1988). *Id.*

As such, the *Yancey* court concluded that, "in light of this compelling and persuasive precedent, the court finds that it retains jurisdiction to adjudicate Yancey's petition notwithstanding his transfer to a BOP facility outside the district." *Id.*

Ironically, the only circuit court not referenced in *Yancey* is the Second Circuit. Until earlier this year, within the Second Circuit, the issue of whether transfer of a petitioner terminates jurisdiction does not appear to have been fully litigated. However, in *Middleton v. Schult*, 299 F. App'x 94 (2d Cir. 2008), the Second Circuit had expressed agreement with another Circuit's holding that the transfer of a petitioner did not divest jurisdiction from the filing court. In *Middleton*, the Second Circuit affirmed the district court's dismissal a §2241 petition based upon the district court finding it did not have subject matter jurisdiction over the claim. *Id.*, at 94, 96. However, the Second Circuit noted the petitioner filed his petition while incarcerated at FCI Ray Brook, in New

6

York. *Id.*, at 95, n.1. It stated he, "thus properly filed his habeas petition under 28 U.S.C. § 2241 in the Northern District of New York." *Id.* In reaching this conclusion, the Second Circuit cited *Francis v. Warden*, 894 F.2d 353 (9th Cir. 1990). *Id.* In *Francis*, the Ninth Circuit held:

> At the time the petition was filed, Francis was incarcerated at Lompoc, California. Before the district court rendered its judgment, Francis was transferred to Leavenworth, Kansas. We maintain our jurisdiction, however, because "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir.1985); *accord Smith v. Campbell*, 450 F.2d 829, 834 (9th Cir.1971). *Francis,* 894 F.2d at 354.

More recently, the ruling by the Second Circuit, in *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025), issued on May 7, 2025, confirms the Second Circuit agrees with *Yancey* and the nine other Circuits. In *Ozturk*, the petitioner was arrested and detained by ICE agents while she was in Massachusetts. The agents then drove her to Vermont where she was held in custody for about six hours. She was then flown to Louisiana and remained in custody. Her counsel filed a §2241 petition in a Massachusetts District Court believing she was in Massachusetts. However, at the time of the filing of the petition, the petitioner was in Vermont. Accordingly, the Massachusetts District Court transferred the petition to the District of Vermont pursuant to 28 U.S.C. §1631. The Second Circuit agreed jurisdiction properly rested in the Vermont district court because that is where she was located when the petition was filed. *Id.*, at 392. Moreover, it declared that the petitioner's "subsequent transfer to Louisiana [did not] strip the District of Vermont of habeas jurisdiction." *Id*. As the basis for this determination, echoing the authority relied upon by *Yancey*, the Second Circuit stated:

> The Supreme Court's decision in *Ex parte Endo*, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), "stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ

7

to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441, 124 S.Ct. 2711. *Id.*

Moreover, contrary to the position taken by Government in this case, in *Ozturk* the Second Circuit noted, "the government concedes that had the petition been filed in Vermont at that time, habeas jurisdiction would be proper there."[3] *Id*.

Unequivocally, the Second Circuit's holding in *Ozturk* is controlling over the matter at bar. Both petitioners seek §2241 habeas relief in the form of release from custody. Both petitioners were transferred to, and confined in, judicial districts outside of the ones which properly acquired initial jurisdiction over their petitions.

Regarding the other two cases relied upon by Respondent, *Rubbo* and *Prins*, they are neither controlling nor persuasive. *Rubbo* was a *pro se* habeas petition seeking release due to the Pandemic. It was litigated in the District of Connecticut. The *pro se* petitioner did not oppose the Respondent's motion to dismiss. Moreover, unlike the matter bar, the claim was facility specific. It was based upon the unsafe conditions of the specific facility, in Connecticut, which housed the petitioner. By the time the respondent's motion was filed, the petitioner had been transferred to a different facility (outside of Connecticut) rendering the petition's facility specific claim moot. Here, the GAS Claim is not location specific as the transfer of JJS from Otisville to Carswell has not rendered the GAS Claim moot.

*Prins* was not even a habeas case. It was an appeal of §1983 action which sought injunctive relief and compensatory damages due to a prisoner being denied proper kosher food at a New York state correctional facility. The district court granted summary judgment in favor of the respondent

---

[3]

In both this case and *Ozturk,* the respondents are represented by the U.S. Attorney's Office.

and dismissed the complaint. By the time the appeal was addressed by Second Circuit, the petitioner had since been released from New York custody and was incarcerated in a Florida jail. *Prins*, 76 F.3d at 505. Upon addressing the appeal, although not raised by the parties, the Second Circuit noted a transfer of the petitioner transfer mooted the claim for injunctive relief but did <u>not</u> divest jurisdiction for compensatory damages. *Prins*, 76 F.3d at 506.

The other argument asserted by Respondent is that the GAS Claim is a "conditions of confinement" claim and, as such, must be litigated within the district where the aggrieved of confinement conditions exist. (Response, pp. 6-7). In support of this argument, Respondent relies upon *Beagle v. Easter*, 2021 WL 1026885 (D. Conn. 2021) and *Perez v. Breckon*, 2019 WL 652410 (NDNY 2019). However, neither of these district court decisions lend persuasive authority as the claims involve specific actions by the wardens, or staff, at the petitioners' facilities. In *Beagle*, the claim was based upon the failure of local prison staff to timely transport the petitioner, who had developed cancerous masses, to medical appointments for consultation with an outside oncologist. In *Perez*, the claim was based upon disciplinary action, taken by the local prison staff, in response to an email sent by the petitioner.

In contrast, the GAS Claim is not premised upon specific conditions existing at FMC Carswell or actions taken by the staff at FMC Carswell. The GAS Claim is based upon an administrative BOP decision to terminate a pending contract to provide GAS to JJS thereby deliberately withholding necessary medical treatment needed by her. As indicated above, this decision -- to withhold medical treatment -- was not made by the warden, nor any staff member, at FMC Carswell. It was made by the Chief of the BOP Comprehensive Medical Contracting Section

in response to an Executive Order issued by the President of the United States.  As such, the GAS Claim remains exactly the same no matter where JJS is housed within the BOP's prison network.

### Other Factors Against Respondent's Request For a Dismissal or Transfer

*Equitable Factors*

This Court should neither transfer nor dismiss this matter based upon the equitable principles of waiver and unclean hands.  *Holland v. Florida*, 560 U.S. 631, 646, 130 S.Ct. 2549, 2560 (2010) ("In the case of AEDPA . . . equitable principles have traditionally governed the substantive law of habeas corpus").

The equitable principle of waiver is based upon "the intentional relinquishment of a known right."  *U.S. v. RePass*, 688 F.2d 154, 158 (2d Cir.1982).  Following JJS's transfer from FCI Otisville, which occurred more than two years ago, Respondent never moved for transfer or dismissal of this case claiming this Court was divested of jurisdiction.  Even now, Respondent only seeks transfer or dismissal because this Court ordered the parties to address the issue of the jurisdiction.  (ECF Doc. 145).

Since the Petition was filed, JJS has been housed in multiple facilities outside of this District. On approximately May 12, 2023, she was transferred from FCI Otisville to a BOP facility in Oklahoma City, Oklahoma.  On approximately June 1, 2023, she was transferred to a BOP facility in Allenwood, Pennsylvania.  On approximately June 17, 2023, she was transferred to MDC Brooklyn.  On approximately November 14, 2023 she was transferred back to Oklahoma City.  On November 15, 2023, she was transferred to FMC Carswell, Texas.  Despite JJS being out of this District, for more than two years, Respondent has never objected to this matter continuing to be litigated in this District.  Further, Respondent never moved to have this matter transferred to the

District Courts in Oklahoma, Pennsylvania or the Eastern District of New York. Moreover, Respondent did not even object to the hearing, on the Transfer Claim, being presided over by Magistrate Netburn, even though, at that time, JJS was housed in the Eastern District of New York. Similarly, in response to the Report and Recommendation (the "R&R") issued by Magistrate Netburn, Respondent never objected and claimed she lacked jurisdiction to issue the R&R.

The Response suggests Respondent did not move for transfer or dismissal this matter because the GAS Claim was held in abeyance in light of the BOP following its protocol for determination of whether it was going to provide GAS to JJS. (Response, pp. 3-4). However, the hearing before Judge Netburn (which occurred when JJS was confined in MDC Brooklyn which is outside of this District) was held prior to the GAS Claim being held in abeyance. Morever, following issuance of the Transfer Order, and the transfer of JJS to FMC Carswell, Judge Broderick continued to issue orders in response to applications by the parties as well as issue ones on his own initiative which required actions taken by the parties. (ECF Doc. 94, 97, 99, 101, 118, 121, 122, 123, 125, 128, 130, 131, 136). In addition, Judge Broderick referred this matter back to Magistrate Netburn to issue a report and recommendation on the GAS Claim. (ECF Doc. 103-109). Following this referral, Magistrate Netburn held a case conference and issued an order requiring the parties to submit status letters updating the Court on the BOP's actions to provide GAS to JJS. (ECF Doc. 110). Thereafter, the parties submitted multiple status letters which were endorsed by Magistrate Netburn with orders requiring follow up status letters. (ECF Doc. 114-117; 119, 133, 135, 139-140). Subsequently, Judge Broderick issued an order reassigning the case to Magistrate Aaron. (ECF text entry dated February 4, 2025). Thereafter, Judge Aaron issued scheduling orders. (ECF Doc. 142, 144).

During the course of all these proceedings, Respondent never asserted that neither Judge Broderick, Magistrate Netburn nor Magistrate Aaron lacked jurisdictional authority to issue these orders due to JJS no longer being confined within the Southern District of New York. Pursuant to Rule 12(h)(1), of the Federal Rules of Civil Procedure, a defense of lack of jurisdiction over the person is waivable. Here, by actively litigating this matter during the past two years, Respondent has equitably waived any right to now seek dismissal or transfer of this matter based upon a lack of personal jurisdiction. *See, Rhurgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 1570 (1999) (indicating a party may forgo the right to contest personal jurisdiction effectively consenting to the court's exercise of adjudicatory authority).

The equitable principle of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332 (2d Cir. 2024) (internal citation and quotation omitted).

Here the actions of the BOP are arguably tainted with an appearance of bad faith. The BOP has delayed this matter for more than a year under the guise of working toward providing GAS for JJS. Then, the BOP suddenly cancelled a fully executed contract for GAS a few weeks before the surgery was scheduled to occur. Obviously, if JJS knew the BOP would act in this manner, she would have never agreed to hold the GAS Claim in abeyance.

Moreover, if this matter is transferred to the Northern District of Texas, the BOP might continue to act in bad faith by engaging in repetitive forum shopping to ensure the GAS Claim is never litigated. For example, if the case is transferred to the Northern District of Texas, but before the GAS Claim is fully litigated there, the BOP could transfer JJS to a new prison in a different district. Then, Respondent could move for dismissal of the Petition or transfer of it to the new

district.  Then, before the GAS Claim is fully litigated in the new district, the BOP could again transfer JJS to a prison in yet another district.  As such, the BOP could effectively prevent the resolution of the GAS Claim by hopscotching JJS from prison to prison -- every few months -- for the next four years until she is released.[4]

It is not idle speculation to believe the BOP will act in bad faith.  Here, the BOP cancelled an approved contract for surgery -- which was issued following a year of medical evaluations and implementation of various BOP protocols (*see*, ECF Doc. 149, Supplemental Memorandum, pp. 7-11, detailing the extent of the protocols undertaken by the BOP) -- on the eve of the surgery.  Moreover, in another matter involving GAS, the court excoriated the BOP for engaging in delay tactics in responding to an inmate's need for GAS.  *See, Iglesias v. Federal Bureau of Prisons*, 598 F.Supp.3d 689 (S.D. IL 2022).  In that matter, the Chief Justice of the U.S. District Court of the Southern District of Illinois wrote:

> [T]hroughout this litigation the Federal Bureau of Prisons ("BOP") has employed tactics similar to the game of Plinko on The Price is Right.  BOP was warned for employing these tactics, and it apologized. Now BOP's tactics are turning into a game of "whack-a-mole." Indeed, it appeared the last of BOP's moles had been "whacked." Then another one "popped-up." This time BOP represented it had an appointment with a surgeon for a consultation of gender confirmation surgery ("GCS") on April 7, 2022, but the surgeon does not even perform vaginoplasties.
>
> For the following reasons, BOP is ordered to show cause why it should not be held in contempt for violating the Court's original preliminary injunction order.  *Id*., at 693-694.

---

[4]

Per the BOP inmate locator [https://www.bop.gov/inmateloc/] JJS is scheduled to be released on October 20, 2029.

*Forum Shopping*

Seeking of dismissal or transfer, at this point in the litigation, presents an appearance of engaging in forum shopping in hope that a court in the Northern District of Texas will not be receptive to the GAS Claim.  This is contrary to the purpose of the immediate custodian rule which the Supreme Court describes as follows:

> This rule, derived from the terms of the habeas statute, serves the important purpose of preventing forum shopping by habeas petitioners. Without it, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago.  *Padilla*, 542 U.S. at 547.

"Once a prisoner has properly filed a petition in the only permissible district naming the only permissible respondent, no such policy is served by transferring the case to a new district (or dismissing the case altogether) every time the BOP decides to move the prisoner."  *Warren v. U.S.*, 2011 WL 4435655 (D.S.C.) at *5 (holding that jurisdiction over a §2241 petition is not divested by the transfer of an inmate to another district).

*The Northern District of Texas Might Decline to Accept Jurisdiction*

If this matter is transferred to the Northern District of Texas, the issue of jurisdiction will be governed by the law of the Fifth Circuit.  Before addressing the merits of the GAS Claim, the Texas district court will have to address whether it can properly accept jurisdiction over this matter given the Fifth Circuit has previously counseled it does not have jurisdiction under similar circumstances. *See, Owens v. Roy*, 394 F. App'x 61, 62 (5th Cir. 2010) ("The only district that may consider a habeas corpus challenge pursuant to §2241 is the district in which the prisoner is confined at the time he filed his § 2241 petition" (citations omitted)).  As such, this Court should consider that a dismissal

14

or transfer of this matter will result in delay caused by initial litigation, within the Northern District of Texas, on the issue as to whether it can even exercise jurisdiction over this matter.

## CONCLUSION

None of the authority cited by Respondent mandates this matter must be dismissed or transferred to the Northern District of Texas. As shown herein, district or circuit courts, within every federal circuit, including the Second Circuit, hold that §2241 jurisdiction -- for petitions which initially complied with the immediate custodian rule -- remains in the filing district and is not divested by an inmate's transfer.

Wherefore, jurisdiction over this matter remains within this District even though JJS has been transferred to, and is currently detained in, FMC Carswell in Texas.


Dated:         June 25, 2025
               Bayside, NY


                              Respectfully submitted,
                              /s/
                              Jeffrey G. Pittell
                              Attorney for Petitioner, JJS
                              *Maher & Pittell, LLP*
                              42-40 Bell Blvd, Ste. 302
                              Bayside, NY 11361
                              (516) 829-2299
                              jp@jpittell.com

15